## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| ERICK SIZEMORE, individually and on behalf of all others similarly situated,<br><br>vs.<br><br>NATURAL ENERGY FIELD SERVICES, LLC | DOCKET NO. \_\_2:20-cv-586_____<br><br>JURY TRIAL DEMANDED<br><br>CLASS AND COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) AND F.R.C.P. 23 |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### I. SUMMARY

1. Plaintiff Erick Sizemore brings this lawsuit to recover unpaid overtime wages and other damages from Natural Energy Field Services, LLC (NEFS) under the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104.

2. Sizemore and the other workers like him regularly worked for NEFS in excess of forty (40) hours each week.

3. These workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4. These workers were paid a day-rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

#### II. JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. Specifically, Sizemore worked for NEFS in this District and Division in Beaver, Allegheny, Westmoreland, and Indiana Counties.

### III. THE PARTIES

8.  Sizemore worked for NEFS from March 2017 until April 2018 as a pipeline coating and corrosion inspector.

9.  Throughout his time with NEFS, Sizemore received a day-rate with no overtime compensation.

10. Sizemore's consent to be a party plaintiff is attached as Exhibit A.

11. Sizemore brings this action on behalf of himself and all other similarly situated workers who were paid by NEFS' day-rate system.

12. Each of these workers received a flat amount for each day worked without overtime pay.

13. The class of similarly situated workers sought to be certified is defined as follows:

> **All current and former inspectors employed by Natural Energy Field Services, LLC who were paid a day rate in the past three (3) years.** (the Putative Class Members).

14. Defendant Natural Energy Field Services, LLC is a Kentucky corporation doing business throughout the United States and may be served through their registered agent, **Register Agent Solutions, Inc., 125 Locust Street, Harrisburg, Pennsylvania 17101** or wherever they may be found.

### IV. COVERAGE UNDER THE FLSA

15. For at least the past three years, NEFS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all times hereinafter mentioned, NEFS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned, NEFS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

18. For at least the past three years, Sizemore and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## V. FACTS

19. NEFS "provides qualified and responsive inspection services utilizing proven personnel. Promoting safety first and client focused execution. NEFS ensures all projects are constructed in accordance with pertinent federal & state regulations, permits, and client specifications."[1]

20. Sizemore worked for NEFS inspecting pipelines as part of the "Mariner 2 Project," a pipeline project spanning from eastern Ohio, across Pennsylvania, to western New Jersey. Specifically, Sizemore worked on the section of the project's pipeline that ran from Scio, Ohio to Indiana County, Pennsylvania.

---

[1] https://nefieldservices.com/about/ (last visited April 21, 2020).

3



https://www.naturalgasintel.com/articles/96631-sunoco-launches-open-season-for-mariner-east-2-project (last visited April 20, 2020).

21. To complete its business objectives, NEFS relies on inspectors.

22. For example, Sizemore worked for NEFS February 2017 until April 2018 as a pipeline coating and corrosion inspector.

23. As an inspector, Sizemore's primary job duties included inspecting the paint coatings on oil and gas pipelines, storage facilities, and other construction and production projects as needed.

24. Sizemore did not have any supervisory duties.

25. Sizemore did not hire for fire employees.

26. Sizemore did not exercise discretion and judgment as to matters of significance.

4

27. To the contrary, Sizemore worked with his hands.

28. Sizemore performed manual labor.

29. Sizemore used hand tools to work on pipelines.

30. Sizemore worked in the elements and would become dirty as a result of his work.

31. Sizemore worked in dangerous conditions.

32. Pipelines have the potential to explode.

33. Pipelines can be dangerous.

34. Sizemore did not work in an office.

35. Sizemore did not manage a business unit.

36. Sizemore could not make decisions as to matters of significance that would impact overall business operations.

37. Sizemore's decisions were limited to routine and manual tasks surrounding pipeline inspections for NEFS.

38. Sizemore was heavily supervised by NEFS.

39. Sizemore was required to follow NEFS policies and procedures.

40. Sizemore reported to NEFS on a regular basis.

41. NEFS determined the pay practice through which Sizemore was compensated.

42. NEFS did not guarantee Sizemore a salary.

43. NEFS did not provide Sizemore overtime pay.

44. NEFS employed Sizemore for purposes of the FLSA.

45. NEFS set Sizemore's schedule.

46. NEFS required Sizemore to work over 40 hours in a week.

47. NEFS typically scheduled Sizemore to work 12 hour shifts, for as many as 7 days a week.

48. NEFS keeps accurate records of the hours, or at least days, of Sizemore's work.

49. NEFS required Sizemore to report his time to it.

50. NEFS required Sizemore to report his expenses to it.

51. NEFS approved Sizemore's time worked.

52. NEFS approved Sizemore's expenses.

53. Separate from his day rate, Sizemore was paid a per diem.

54. The per diem Sizemore was paid was not considered wages.

55. Sizemore's work was production based.

56. Sizemore was prohibited from deviating from NEFS' quality standards.

57. Sizemore is a blue-collar worker.

58. Sizemore is not exempt under any white-collar exemption.

59. Sizemore was not guaranteed a salary.

60. NEFS cannot demonstrate that Sizemore was paid on a salary basis in accordance with the FLSA and PMWA.

61. NEFS cannot demonstrate that Sizemore was not its employee for purposes of the FLSA and PMWA.

### VI.   FLSA VIOLATIONS

62. Sizemore incorporates the preceding paragraphs by reference.

63. As set forth herein, NEFS violated the FLSA by failing to pay Sizemore and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

64. At all relevant times, NEFS has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

65. NEFS employed Sizemore and each member of the Putative Class.

66. NEFS' pay policy denied Sizemore and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

67. NEFS owes Sizemore and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

68. NEFS knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Sizemore and the Putative Class is willful.

69. Due to NEFS' FLSA violations, Sizemore and the Putative Class Members are entitled to recover from NEFS for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

70. The improper pay practices at issue were part of a continuing course of conduct, entitling Sizemore and Putative Class Members to recover for all such violations, regardless of the date they occurred.

### VII.  PMWA Violations

71. Sizemore brings this claim under the PMWA as a Rule 23 class action.

72. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

73. At all relevant times, NEFS was subject to the requirements of the PMWA.

74. At all relevant times, NEFS employed Sizemore and the Putative Class Members as an "employee" within the meaning of the PMWA.

75. The PMWA requires employers like NEFS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Sizemore and the Putative Class Members are entitled to overtime pay under the PMWA.

76. NEFS has and had a policy and practice of misclassifying Sizemore and the Putative Class Members as exempt and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

77. Sizemore and the Putative Class Members seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

78. Sizemore and the Putative Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by NEFS, as provided by the PMWA.

### VII.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

79. Sizemore incorporates all previous paragraphs and alleges that the illegal pay practices NEFS imposed on Sizemore were likewise imposed on the Putative Class Members.

80. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and PMWA.

81. The Putative Class Members were subject to the same working conditions as Sizemore.

82. The Putative Class Members are similarly situated based on NEFS' common pay policy.

83. The Putative Class Members are similarly situated based on NEFS' common practices applied to all Putative Class Members.

84. The Putative Class Members are similarly situated because NEFS' plan regarding the use and pay of Putative Class Members is similar.

85. The Putative Class Members' primary job duties included inspecting oil and gas pipelines, storage facilities, and other construction and production projects as needed.

86. Putative Class Members did not have any supervisory duties.

87. Putative Class Members did not hire or fire employees.

88. Putative Class Members did not exercise discretion and judgment as to matters of significance.

89. To the contrary, Putative Class Members worked with their hands.

90. Putative Class Members performed manual labor.

91. Putative Class Members used hand tools to work on pipelines.

92. Putative Class Members worked in the elements and would become dirty as a result of their work.

93. Putative Class Members worked in dangerous conditions.

94. Putative Class Members do not work in an office.

95. Putative Class Members do not manage a business unit.

96. Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

97. Putative Class Members' decisions are limited to routine and manual tasks surrounding pipeline inspections for NEFS.

98. Putative Class Members are heavily supervised by NEFS.

99. Putative Class Members are required to follow NEFS policies and procedures.

100. Putative Class Members report to NEFS on a regular basis.

101. NEFS determined the pay practice through which all Putative Class Members are compensated.

102. NEFS did not guarantee the Putative Class Members a salary.

103. NEFS did not provide the Putative Class Members overtime pay.

104. NEFS employed the Putative Class Members for purposes of the FLSA.

105. NEFS set the Putative Class Members' schedule.

106. NEFS required the Putative Class Members to work over 40 hours in a week.

107. NEFS typically scheduled Putative Class Members to work 10-12 hour shifts, for as many as 6-7 days a week.

108. NEFS keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

109. NEFS required the Putative Class Members to report their time to it.

110. NEFS required the Putative Class Members to report their expenses to it.

111. NEFS approved the Putative Class Members' time worked.

112. NEFS approved the Putative Class Members' expenses.

113. The Putative Class Members did not receive a day rate that exceeded $455 a day.

114. The Putative Class Members did not receive more than $100.000 a year.

115. Separate from the day rate, the Putative Class Members were paid a per diem.

116. The per diem was not considered wages.

117. The Putative Class Members were paid other reimbursements.

118. The reimbursements were not considered wages.

119. The Putative Class Members' work was production based.

120. The Putative Class Members' work was integral to the operation of NEFS' pipelines and crude transportation.

121. The Putative Class Members were prohibited from deviating from NEFS' quality standards.

122. The Putative Class Members are blue collar workers.

123. The Putative Class Members are not exempt under any white-collar exemption.

124. The Putative Class Members were not guaranteed a salary.

125. NEFS cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA and PMWA.

126. NEFS cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA and PMWA.

127. Numerous other individuals who worked with Sizemore indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

128. Based on his experiences and tenure with NEFS, Sizemore is aware that NEFS' illegal practices were imposed on the Putative Class Members.

129. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

130. NEFS' failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

131. Sizemore's experiences are therefore typical of the experiences of the Putative Class Members.

132. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

133. Sizemore has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Sizemore has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

134. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and NEFS will reap the unjust benefits of violating the FLSA, PMWA, and any other applicable state labor laws.

136. Furthermore, even if some of the Putative Class Members could afford individual litigation against NEFS, it would be unduly burdensome to the judicial system.

137. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

138. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether NEFS employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and PMWA;

   b. Whether NEFS' day rate pay practice meets the salary-basis test;

   c. Whether NEFS' decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether NEFS' violation of the FLSA and PMWA was willful; and

   e. Whether NEFS' illegal pay practices were applied uniformly across the nation to all Putative Class Members.

139. Sizemore's claims are typical of the claims of the Putative Class Members. Sizemore and the Putative Class Members sustained damages arising out of NEFS' illegal and uniform employment policy.

140. Sizemore knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

141. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## VIII. Jury Demand

142. Sizemore demands a trial by jury.

## IX. RELIEF SOUGHT

WHEREFORE, Sizemore prays for judgment against NEFS as follows:

a. An Order designating the Putative Class as a FLSA collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order appointing Sizemore and his counsel to represent the interests of the FLSA Class;

c. For an Order finding NEFS liable to Sizemore and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

e. For an Order appointing Sizemore and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

f. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

g. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    Michael A. Josephson
    PA I.D. No. 308410
    Andrew W. Dunlap
    Texas Bar No. 24078444
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    Joshua P. Geist
    PA I.D. No. 85745
    **GOODRICH & GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: (412) 766-1455
    Fax: (412)766-0300
    josh@goodrichandgeist.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**